UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-----------------------------------X

DERRICK PERKINS,

         *Plaintiff*,

  - against -

DETECTIVE JOSEPH SOLOMON, *et al.*

         *Defendants*.

-----------------------------------X

**<u>MEMORANDUM & ORDER</u>**

No. 17-cv-3683 (KAM)(MMH)

**KIYO A. MATSUMOTO, United States District Judge:**

On June 15, 2017, Plaintiff Derrick Perkins ("Plaintiff") commenced this action pro se against Defendants Joseph Solomon, Emanuel Vizzotti, Salvatore Taorimina, Charles Lovett, Kevin Phelan, Joseph Manzella, Kevin Hammerschlog (the "Officer Defendants"), Michelle Kaszuba, Crystal Igneri, Denise Tirino (the "Queens Defendants," together with the Officer Defendants, the "City Defendants"), Matthew Levy, and Paul Kearon (the "Levy Defendants"). Liberally construed, the Complaint alleges six causes of action under 42 U.S.C. § 1983 for false arrest (Count One), malicious prosecution (Count Two), excessive force (Count Three), fabrication of evidence (Count Four),[1] conspiracy to fabricate evidence (Count Five), deprivation of medical care

---

[1] Although Plaintiff claims that Defendants tampered with, destroyed, and did not voucher evidence of a cellphone linked to a 911 call, (Compl. at 2), Plaintiff does not explicitly claim that the Defendants fabricated evidence.

(Count Six), and one state law claim for intentional infliction of emotional distress (Count Seven).    (ECF No. 1, Complaint ("Compl.").)

Presently before the Court are two motions to dismiss the Complaint on behalf of all Defendants pursuant to Federal Rule of Civil Procedure 12(b)(6).  (*See* ECF Nos. 114, 119.)  Plaintiff did not file responses to either of the motions to dismiss. (*See* June 25, 2025 Dkt. Order.)

## BACKGROUND

Pursuant to Rule 12(b)(6), the Court accepts the following allegations in the Complaint as true for the purpose of resolving the motions.  *See Herrera v. Comme des Garcons, Ltd.*, 84 F.4th 110, 113 (2d Cir. 2023).  In view of Plaintiff's pro se status, the Court will consider, along with the Complaint, the factual allegations in Plaintiff's letter opposing Defendants' pre-motion conference letter regarding their then-anticipated motions to dismiss.  *See Walker v. Schult*, 717 F.3d 119, 122 n.1 (2d Cir. 2013); (ECF No. 110, "Pl.'s Opp.")

## I.    Factual Background

On July 7, 2016, the New York City Police Department ("NYPD") received a 911 call reporting the armed robbery of a cellphone. (Compl. at 2.)    Plainclothes NYPD officers investigating the report--the Levy Defendants--approached Plaintiff's vehicle, which was parked seven blocks away from the site of the alleged robbery,

2

with their guns drawn. (*Id.* at 2-3.) Plaintiff drove away in fear as the Levy Defendants pursued him in an unmarked vehicle. (*Id.*) Although a supervising officer was in the process of calling off the pursuit, the Levy Defendants rammed Plaintiff's vehicle, causing it to flip. (*Id.* at 2-3, 5-6.) The resulting collision killed a motorist in a neighboring vehicle and injured a pedestrian. (*Id.* at 3, 6.)

When the Levy Defendants extracted Plaintiff from his vehicle, Plaintiff was drifting "in and out of consciousness." (*Id.* at 3.) The officers arrested Plaintiff, searched his car, and took him to a "holding pen," where he was held for more than twenty-four hours without medical treatment. (*Id.*)

On July 8, 2016, the day after the collision, Plaintiff was arraigned in Queens County Criminal Court on eleven felony charges, including murder in the second degree, assault in the first degree, and robbery in the first degree. (*Id.* at 4; *see* Compl. Ex. A.) On July 12, 2016, Plaintiff received notice of a grand jury summons. (*Id.* at 4.) As will be discussed further, the Court takes judicial notice of Plaintiff's eventual guilty plea for first degree assault and second degree manslaughter in connection with the collision.

Plaintiff also claims that members of the NYPD and Queens District Attorney's Office took pictures of a cellphone in Plaintiff's car. (*Id.* at 4-5.) The Complaint is vague about

3

whether this cellphone was Plaintiff's or the one allegedly stolen in the armed robbery. (*See id.* at 5.)  Although vouchers for seized evidence are typically given upon request, a voucher for that cellphone was not made available for Plaintiff's inspection.  (*Id.*)

## II.  Procedural Background

Plaintiff commenced the instant action on June 15, 2017.  On August 7, 2017, the City Defendants moved to stay Plaintiff's action until his criminal proceedings in state court were resolved. (ECF No. 11 at 2-3.)  Magistrate Judge Lois Bloom granted the motion to stay on October 5, 2017.  (ECF No. 29.)

On January 14, 2020, Defendants asked Magistrate Judge Bloom to lift the stay in this case after Plaintiff was convicted of offenses arising from the July 7, 2016.  (ECF No. 74.)  Magistrate Judge Bloom extended the stay on February 19, 2020 given Plaintiff's intention to move to vacate his plea.  (ECF No. 77.) Plaintiff was granted numerous stays in this case as he appealed his convictions in New York's appellate courts.  (*See* Feb. 10, 2023, May 24, 2023, Nov. 28, 2023, Mar. 11, 2024, July 1, 2024 Dkt. Orders.)  The stay was lifted on September 25, 2024 due to "substantial delay . . . and uncertainties in . . . Plaintiff's appeal process."  (Sept. 25, 2024 Dkt. Order.)

On December 2, 2024, the City Defendants moved for a pre-motion conference regarding their anticipated motion to dismiss. (ECF No. 103.)  Plaintiff responded in opposition to the City

Defendants' pre-motion conference letter on December 15, 2024, which was filed on January 8, 2025.  (*See* Pl.'s Opp.)

On April 25, 2025, the City Defendants moved to dismiss the Complaint (ECF No. 114; ECF No. 116, "City Mem."), and the Levy Defendants joined the City Defendants' motion, (ECF No. 119).  Plaintiff did not file any responses, and the Court deemed the Defendants' motions unopposed.  (June 25, 2025 Dkt. Order.)  The City Defendants submitted supplemental briefing regarding Plaintiff's excessive force claim on October 31, 2025.  (ECF No. 127, "City Supp.")

## III. Extrinsic Evidence

In resolving a motion under Rule 12(b)(6), the Court must limit its consideration to the facts as asserted within the four corners of the Complaint, documents incorporated by reference into the Complaint, documents integral to the Complaint, and matters properly subject to judicial notice.  *Clark v. Hanley*, 89 F.4th 78, 93 (2d Cir. 2023) (quoting *Goel v. Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016)).  As is relevant here, the Court may take judicial notice of "public records, including arraignments, arrest reports . . . and certificates of disposition," in deciding a motion to dismiss.  *Burris v. Nassau Cnty. Dist. Att'y*, 2017 WL 9485714, at *3 (E.D.N.Y. Jan. 12, 2017) (internal quotations omitted).  Importantly, documents subject to judicial notice cannot be used at the motion to dismiss stage for the "truth of

5

the matters asserted therein." *James v. Bradley*, 808 Fed. App'x 1, 3 (2d Cir. 2020) (summary order); *Glob. Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 157 (2d Cir. 2006). Rather, those documents may only be used to establish the fact that they, or the proceedings they reflect, exist. *See Glob. Network Commc'ns, Inc.*, 458 F.3d at 157 (district court erred in using contents from defendant-company CEO's testimony in criminal proceeding as a basis for its reasoning).

Pursuant to those principles, the Court takes judicial notice of Plaintiff's guilty pleas and convictions in state court for his actions relating to his claims in this case. Plaintiff's criminal proceedings also form the basis of his § 1983 claims, so they are both incorporated by and integral to the Complaint. *See Matos v. Discovery Commc'ns, LLC*, 750 F. Supp. 3d 307, 312-13 (S.D.N.Y. 2024). For instance, Plaintiff's falsification of evidence claim directly pertains to the validity of evidence used in his criminal proceedings. (*See* Compl. at 6-7.) Plaintiff also makes numerous references to his criminal proceedings in the Complaint, particularly in relation to the Queens Defendants presenting evidence to a grand jury. (*Id.* at 11-12.)

As to what transpired in those state criminal proceedings, Plaintiff pleaded guilty to and was convicted in state court for first degree assault and second degree manslaughter. (*See* ECF No. 111-1 at 1.) On December 9, 2019, Plaintiff was sentenced to

6

incarceration and post-release parole for his convictions. (*See id.*) The New York Supreme Court Appellate Division, Second Department denied Plaintiff's application for leave to appeal his convictions on June 9, 2023, rendering them final. *See People v. Perkins*, 2023 WL 3914881 (N.Y. App. Div. June 9, 2023).

In considering Defendants' motions, the Court declines to take judicial notice of or otherwise consider the surveillance video of the collision referenced in the Levy Defendants' pre-motion conference letter filing. (*See* ECF No. 107.) To start, the Complaint does not "attach[] . . . or incorporate[] by reference" the video. *Thomas v. Westchester Cnty. Health Care Corp.*, 232 F. Supp. 2d 273, 275 (S.D.N.Y. 2002). Nor is the video "integral" to the Complaint because Plaintiff does not "rel[y] heavily upon" the video's "effect." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002); *Nat'l Acad. of Television Arts & Scis., Inc. v. Multimedia Sys. Design, Inc.*, 551 F. Supp. 3d. 408, 418 n.2 (S.D.N.Y. 2021); *Friedl v. City of New York*, 210 F.3d 79, 83-84 (2d Cir. 2000) ("[A] district court errs when it considers affidavits and exhibits submitted by defendants, or relies on factual allegations contained in legal briefs or memoranda in ruling on a 12(b)(6) motion to dismiss." (citation modified)). At this stage, the surveillance video of the collision is not properly before the Court. The Court now considers the applicable legal standard for Defendants' motions to dismiss.

**LEGAL STANDARD**

Defendants move to dismiss the Complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. In this posture, courts must accept all well-pleaded, nonconclusory factual allegations in the complaint as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). To survive a motion to dismiss, a complaint must plead sufficient facts to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Courts, however, do not need accept conclusory assertions as true. *Id.* at 678-79; *see Watson Lab'ys Inc. v. Forest Lab'ys, Inc.*, 101 F.4th 223, 235 n.5 (2d Cir. 2024).

As is relevant here, courts are "obliged to construe [a pro se plaintiff's] pleadings liberally, particularly when they allege civil rights violations." *McEachin v. McGuinnis*, 357 F.3d 197, 200 (2d Cir. 2004) (citing *Weinstein v. Albright*, 261 F.3d 127, 132 (2d Cir. 2001)). This obligation remains after *Twombly*. *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009). Applying these principles, the Court turns to Defendants' arguments.

## DISCUSSION

**I.    Plaintiffs' Claims Against Queens Defendants Are Barred By Absolute Immunity**

Because absolute prosecutorial immunity would be dispositive of the claims against the Queens Defendants, the Court considers its applicability as a threshold matter.   Prosecutors enjoy absolute immunity when they act as advocates, including when "initiating a prosecution and . . . presenting the State's case." *Imbler v. Pachtman*, 424 U.S. 409, 431 (1976); *Zahrey v. Coffey*, 221 F.3d 342, 346-47 (2d Cir. 2000); *Shmueli v. City of New York*, 424 F.3d 231, 236-37 (2d Cir. 2005).   This remains true even when that evidence is alleged to have been fabricated by law enforcement officers.   *Bernard v. Cnty. of Suffolk*, 356 F.3d 495, 503 (2d Cir. 2004).

Conversely, prosecutors enjoy only qualified immunity when they act as investigators.   Though "[t]he line between a prosecutor's advocacy and investigating roles might sometimes be difficult to draw," *Zahrey*, 221 F.3d at 347, the question turns on whether the challenged prosecutorial action took place before or after prosecutors had probable cause to effect an arrest, *see Hill v. City of New York*, 45 F.3d 653, 662 (2d Cir. 1995).   For example, prosecutors were deemed to have acted in their investigatory roles when they fabricated evidence well in advance of a defendant's indictment by a grand jury.   *Buckley v. Fitzsimmons*, 509 U.S. 259,

9

275 (1993).

Here, the Complaint alleges that the Queens Defendants introduced allegedly fabricated evidence to a grand jury, not that they participated in the creation of that evidence. (*See* Compl. at 11-12 (Queens Defendants "knowingly" participated in or allowed the "introduction" of illegal evidence to a seated grand jury).) Because prosecutors enjoy absolute immunity "for any misconduct in the presentation of evidence to [] grand juries," *Bernard*, 356 F.3d at 505, the Court grants the motion to dismiss federal claims against the Queens Defendants with prejudice and also dismisses the intentional infliction of emotional distress claim alleged against them for the same reason, *Collins v. City of New York*, 923 F. Supp. 2d 462, 479 (E.D.N.Y. 2013) ("Prosecutors' immunity under state law is identical to their immunity under § 1983."). The Court next considers the viability of the claims alleged against the Officer and Levy Defendants.

## II. Plaintiff's Federal Claims Against Officer and Levy Defendants

### A.    Applicability of the Favorable Termination Rule

Plaintiff brings federal claims under 42 U.S.C. § 1983 against the remaining Defendants for false arrest, malicious prosecution, excessive force, fabrication of evidence and conspiracy thereto, and deprivation of medical care. Because convictions were entered against Plaintiff in state court in relation to some of the

10

underlying events, the favorable termination rule requires dismissal of any § 1983 claims that imply the invalidity of those convictions. *Heck v. Humphrey*, 512 U.S. 477, 487 (1994). The "[a]pplication of these principles requires the [C]ourt to examine the relationship between the criminal conviction[s] and each of the plaintiff's civil claims." *Jackson v. Suffolk Cnty. Homicide Bureau*, 135 F.3d 254, 256 (2d Cir. 1998).

### 1.    Count One: False Arrest

Defendants correctly argue that Plaintiff's false arrest claim is barred by *Heck*. (City Mem. at 6.) Under New York law, Plaintiff must allege the absence of probable cause to state a claim for false arrest. *Singer v. Fulton Cnty. Sheriff,* 63 F.3d 110, 114, 118-19 (2d Cir.1995), *cert. denied,* 517 U.S. 1189 (1996); *Bernard v. United States,* 25 F.3d 98, 102 (2d Cir. 1994). He is, however, precluded from doing so because his convictions for manslaughter and assault conclusively establish the existence of probable cause. *Cameron v. Fogarty,* 806 F.2d 380, 388 (2d Cir.1986), *cert. denied,* 481 U.S. 1016 (1987). The existence of probable cause to arrest on any one charge forecloses false arrest claims on all charges. *Jaegly v. Couch*, 439 F.3d 149, 152 (2d Cir. 2006). Plaintiff's false arrest claim would thus necessarily imply the invalidity of his state criminal proceedings and is dismissed with prejudice. *Singer*, 63 F.3d at 118-19; *Jean-Laurent v. Hennessy*, 2008 WL 3049875, at *8-9 (E.D.N.Y. Aug. 1, 2008) (*Heck*

bars false arrest claim); *Boston Ret. Sys. v. Telefonaktiebolaget LM Ericsson*, 2024 WL 4023842, at \*6 (2d Cir. 2024) (summary order) ("[F]urther amendments would have been futile given the inability to cure the legal defects."); *Stegemann v. United States*, 132 F.4th 206, 210 (2d Cir. 2025) (same).

### 2.    Count Two: Malicious Prosecution

Unlike false arrest, claims for malicious prosecution proceed on a charge-by-charge basis. *Chiaverini v. City of Napoleon, Ohio*, 602 U.S. 556, 562-63 (2024).   In other words, Plaintiff could successfully assert malicious prosecution as to one charge while failing with respect to another.   *Id.*; *see also Posr v. Doherty*, 944 F.2d 91, 100 (2d Cir. 1991).   The Court finds that Plaintiff's malicious prosecution claim with respect to his manslaughter and assault charges are *Heck*-barred, but that his claim with respect to robbery is not.

"Malicious prosecution suits require, as an element of the offense, 'the termination of the proceeding in favor of the accused.'"   *Poventud v. City of New York*, 750 F.3d 121, 130 (2d Cir. 2014) (quoting *Smith-Hunter v. Harvey*, 734 N.E.2d 750, 752 (N.Y. 2002)).   Here, Plaintiff pleaded guilty to first degree assault and second degree manslaughter, (*see* ECF No. 111-1 at 1), and the state appellate court denied Plaintiff's application to appeal his convictions, *see People v. Perkins*, 2023 WL 3914881 (N.Y. App. Div. June 9, 2023).   Success   on   his   malicious

prosecution claims with respect to manslaughter and assault would require those charges to have terminated in his favor, which they did not.    Plaintiff's malicious prosecution claims as to manslaughter and assault are thus barred by *Heck* and dismissed. *See O'Neal v. Spota*, 2017 WL 118044, at *3 (E.D.N.Y. Jan. 12, 2017).

In contrast, success on a malicious prosecution claim for the charge of robbery in the first degree does not necessarily imply the invalidity of Plaintiff's state court convictions for other crimes.    To be sure, the malicious prosecution as to the robbery charge is inartfully pleaded.    But the Complaint, liberally construed, does allege that Plaintiff's vehicle was impounded by events set forth by "an emergency 911 call stating that an individual had been robbed at gunpoint for a cellphone" and also argues that the failure to voucher the cellphone means it "cannot be deemed evidence for . . . probable cause."    (Compl. at 1, 5); *Estelle v. Gamble*, 429 U.S. 97, 106 (1976) ("[H]owever inartfully pleaded," a pro se claim should not be dismissed unless it "appears beyond doubt that the plaintiff can prove no set of facts . . . which would entitle him to relief" (citation omitted)).    Although the ultimate disposition of the robbery charge is unclear from the pleadings, the "favorable termination" element of malicious prosecution does not require the charge to have resolved with an "affirmative indication of innocence," and

13

instead merely requires that it "end[] without a conviction." *Thompson v. Clark*, 596 U.S. 36, 49 (2022). Plaintiff's malicious prosecution claim as to the first degree robbery charge is thus not barred by *Heck*.

### 3.    Count Three:  Excessive Force

Plaintiff's excessive force claim is not categorically *Heck*-barred, though Plaintiff is precluded from pursuing certain theories related to this claim. The usual presumption that an "excessive force claim does not [] bear the requisite relationship to the underlying conviction under *Heck* to require its dismissal" is not straightforwardly applicable where, as here, Plaintiff's manslaughter conviction stems from the vehicular collision forming the basis of his excessive force claims. *Prioleau v. Caserta*, 2012 WL 5389992, at *6 (E.D.N.Y. Sept. 12, 2012) (internal quotations omitted). In particular, having pleaded guilty to "recklessly caus[ing] the death of another person," Plaintiff is barred from arguing that the alleged ramming by police was the *sole cause* of the bystander-motorist's death. N.Y. Penal Law § 125.15(1); *People v. Hussain*, 221 N.Y.S.3d 746, 752 (N.Y. App. Div. 2024) (a person "causes" the death of another when his conduct is a "sufficiently direct cause" of that death). However, his excessive force claim is not categorically *Heck*-barred because his conviction does not require that his own reckless conduct be the *only* cause of someone's death. *See Hussain*, 221 N.Y.S.3d at 752.;

14

*Hamlin v. McMahon*, 2019 WL 6619342, at \*5-7 (D. Conn. Dec. 5, 2019) ("[A]lthough *Heck* bars many of the theories under which the plaintiff asserts his excessive force claim, the *Heck* doctrine does not foreclose a claim of excessive force in its entirety" because "a finding that the defendant officers used excessive force . . . [in] striking the plaintiff from behind . . . would not invalidate his conviction" of "causing death by increasing the speed of his motor vehicle to evade the police"). Plaintiff's plea allocution for manslaughter may contain statements about what precisely caused the manslaughter and eventually reveal that his excessive force claim is *Heck*-barred. But, at the motion to dismiss stage, the Court may not yet consider the contents of the plea allocution for "the truth of the matters asserted." *Glob. Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 157 (2d Cir. 2006). Accordingly, Plaintiff's excessive force claim survives *Heck*.

### 4. Counts Four, Five, Six: Fabrication of Evidence, Conspiracy to Fabricate Evidence, Deprivation of Medical Care

Plaintiff's fabrication of evidence, conspiracy to fabricate evidence, and deprivation of medical care claims clearly do not impugn the validity of his underlying convictions. First, Plaintiff's fabrication of evidence claims relate to the unvouchered cellphone, which could have constituted evidence with respect to the armed robbery but would have been irrelevant to his

15

manslaughter or assault conviction. The same is true for his conspiracy to fabricate evidence claim. Accordingly, Plaintiff's fabrication of evidence claims are not *Heck*-barred, given that there is no underlying state conviction for robbery.

Plaintiff's deprivation of medical care claim is similarly attenuated from his convictions. *See Jackson v. Cuomo*, 2022 WL 310154, at *9 (S.D.N.Y. Feb. 2, 2022) (Plaintiff's procedural due process claim under Fourteenth Amendment not barred by *Heck*); *Poventud v. City of New York*, 750 F.3d 121, 132 (2d Cir. 2014) ("[M]any violations of constitutional rights, even during the criminal process, may be remedied without impugning the validity of a conviction.") Plaintiff's claims for malicious prosecution for robbery, excessive force, fabrication of evidence, conspiracy to fabricate evidence, and deprivation of medical care are not barred by the favorable termination rule of *Heck v. Humphrey*.

**B.    Plaintiff's Remaining Federal Claims**

Although Counts Two through Six are not subject to *Heck*'s favorable termination rule, all claims, except for excessive force, must be dismissed for failure to state a plausible basis for relief.

**1.    Count Two:  Malicious Prosecution**

To state a claim under § 1983 for malicious prosecution on the robbery charge, Plaintiff must allege "(1) the initiation or continuation of a criminal proceeding against plaintiff; (2)

16

termination of the proceeding in plaintiff's favor; (3) lack of probable cause for commencing the proceeding; and (4) actual malice as a motivation for the defendant's actions." *Dettelis v. Sharbaugh*, 919 F.3d 161, 163-64 (2d Cir. 2019) (internal quotations omitted). In the Second Circuit, "initiation" means that the defendant "play[ed] an active role in the prosecution, such as giving advice and encouragement or importuning the authorities to act." *Manganiello v. City of New York*, 612 F.3d 149, 163 (2d Cir. 2010) (citing *Rohman v. N.Y.C. Transit Auth.*, 215 F.3d 208, 217 (2d Cir. 2000)). A defendant does so when he "file[s] the charges" or "prepare[s] an alleged false confession and forward[s] it to prosecutors." *Manganiello*, 612 F.3d at 163. The Complaint adequately alleges that Defendant Joseph Solomon filed the felony complaint, (Compl. at 4), but fails to allege any facts demonstrating that any of the other remaining Defendants "initiated" the prosecution. *See McDaniel v. City of New York*, 585 F. Supp. 3d 503, 517-18 (S.D.N.Y. 2022) (dismissing malicious prosecution for failure to allege "initiation" of proceedings by defendants), *report and recommendation adopted*, 2022 WL 874769 (S.D.N.Y. Mar. 24, 2022).

The claim for malicious prosecution must be dismissed for an additional reason. Plaintiff fails to plead facts showing that Defendants, including Defendant Solomon, both "lack[ed] . . . probable cause for commencing the proceeding," *Dettelis*, 919 F.3d

17

at 164, and acted with "actual malice," *Manganiello*, 612 F.3d at 163-64.  The latter deficiency is downstream of the former.  In the Second Circuit, a "lack of probable cause generally creates an inference of malice."  *See id.* at 163 (citing *Boyd v. City of New York*, 336 F.3d 72, 78 (2d Cir. 2003).  "Probable cause, in the context of malicious prosecution" requires "facts and circumstances as would lead a reasonably prudent person to believe the plaintiff guilty."  *Boyd*, 336 F.3d at 76 (citation omitted).  Conversely, a *lack* of probable cause can be shown through allegations that defendants "became aware" of exculpatory evidence or any "intervening facts" tending to contradict the probable cause determination.  *Jackson v. Nassau Cnty.*, 552 F. Supp. 3d 350, 372-73 (E.D.N.Y. 2021) (internal quotations omitted); *Shabazz v. Kailer*, 201 F. Supp. 3d 386, 394 (S.D.N.Y. 2016).

The linchpin of Plaintiff's malicious prosecution claim is the alleged failure to voucher a cellphone.  Notably, Plaintiff does not allege that the cellphone was planted by any defendant to manufacture probable cause for the robbery charge, or even that the cellphone was his and, thus, not the stolen property giving rise to the robbery investigation in the first instance.  Instead, the Complaint becomes exceedingly vague and unintelligible when describing the unvouchered cellphone, or what exactly the Defendants did or failed to do that states a constitutional violation.  Although the Court must give credit to the Plaintiff's

18

well-pleaded factual allegations, there are no set of facts the Court can cobble together to "nudge[]" the malicious prosecution claim "across the line from conceivable to plausible." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  Accordingly, the malicious prosecution claim is dismissed without prejudice.

### 2.    Count Three:  Excessive Force

As an initial matter, Plaintiff only alleges that the Levy Defendants rammed into his vehicle, so he fails to plead an excessive force claim with respect to the Officer Defendants. *Demosthene v. City of New York*, 831 Fed. App'x 530, 535 (2d Cir. 2020) (summary order) (requiring allegations of personal involvement to state a claim for excessive force); *May v. Levy*, 659 F. Supp. 3d 323, 337 (E.D.N.Y. 2023); (*see* Compl. at 3, 14; Pl.'s Opp. at 1.)  Those claims are thus dismissed without prejudice.

As is well-established, "[t]he Fourth Amendment prohibits the use of unreasonable and therefore excessive force by a police officer in the course of effecting an arrest."  *Tracy v. Freshwater*, 623 F.3d 90, 96 (2d Cir. 2010) (citation omitted). The officers' conduct must be "objective[ly] reasonable," the assessment of which requires a "balancing [between] the nature and quality of the intrusion on the plaintiff's Fourth Amendment interests against the countervailing governmental interests at stake."  *Id.* (citing *Amnesty Am. v. Town of W. Hartford*, 361 F.3d

113, 123 (2d Cir. 2004)).  That balancing is guided by "at least three factors: (1) the nature and severity of the crime leading to the arrest, (2) whether the suspect poses an immediate threat to the safety of the officer or others, and (3) whether the suspect was actively resisting arrest or attempting to evade arrest by flight."  *Id.* (citing *Graham v. Connor*, 490 U.S. 386, 395 (1989); *Jones v. Parmley*, 465 F.3d 46, 61 (2d Cir. 2006)).  This inquiry is "intensely factual" and "generally best left for a jury to decide."  *Oakley v. Dolan*, 980 F.3d 279, 284 (2d Cir. 2020); *Ayers v. Suffolk Cnty. Dist. Att'y Off.*, 2022 WL 4539580, at *4 (E.D.N.Y. Sept. 28, 2022) ("Given the fact-specific nature of the inquiry on an excessive force claim, such claims are often not amenable to early resolution." (internal quotations omitted)).

Defendants argue that the excessive force claims should be dismissed because "Plaintiff's own allegations establish that the collision[] of the vehicles was objectively reasonable and necessary in light of his admitted reckless driving."  (City Supp. at 1.)  But the Court finds no indication on the face of the Complaint that Plaintiff was driving so recklessly that the alleged ramming can only be found to be "objectively reasonable."  Graham, 490 U.S. at 399.  Instead, the Complaint merely states that two men in plainclothes approached him with their guns drawn, that he subsequently drove away in fear, that the armed men continued to follow him in an unmarked vehicle and then rammed into Plaintiff's

20

car. (Compl. at 3.)

Defendants urge the Court to consider the "sworn criminal complaint, attached to the pleadings" which "reveals that police pursued Plaintiff with their lights and sirens activated" and that Plaintiff was driving over "twenty-five miles per hour over the posted speed limit."  (City Supp. at 4-5.)  But documents, even those attached to the Complaint, may only be used "to determine what [they] state" and "not to prove the truth of their contents." *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007) (emphasis omitted).  "A plaintiff does not necessarily 'adopt as true the *full* contents of any document attached to a complaint or adopted by reference.'"  *Pearson v. Gesner*, 125 F.4th 400, 406-08 (2d Cir. 2025) (emphasis in original) (citing *Gant v. Wallingford Bd. of Edu.*, 69 F.3d 669, 674 (2d Cir. 1995).  This is especially true when such a document was "prepared by or for the defendant," because they may reflect "defendant's version of contested events . . . that are unlikely to have been adopted by the plaintiff."  *Id.* (internal quotations omitted).  The Court may consider the contents of the criminal complaint only when the Plaintiff makes allegations about "what" the criminal complaint does or does not say.  *Roth*, 489 F.3d at 510 (documents may only be considered when plaintiffs "allege[] that the document contains, or does not contain, certain statements").  Plaintiff has not done so here, so the Court declines to consider the

contents of the criminal complaint for the "truth of the matters asserted." *Id.* at 509.[2]

The Court also declines to deem Plaintiff's guilty plea for second degree manslaughter--meaning "recklessly caus[ing] the death of another person"--as dispositive to dismiss the excessive force claim.    N.Y. Penal Law § 125.15(1).    The existence of reckless conduct does not afford officers carte blanche to employ any amount of force, and the Fourth Amendment still requires facts showing that the force be "objectively reasonable."  *See Graham*, 490 U.S. at 399.

The Levy Defendants secondarily argue that they are entitled to qualified immunity, which "shields officers from civil liability so long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *City of Tahlequah, Okla. v. Bond*, 595 U.S. 9, 12 (2021) (internal quotations omitted); (*see* City Supp. at 708).  In support, the Levy Defendants cite *Scott v. Harris*, a Supreme Court case they argue is "nearly[] identical" to the ramming here, given that police had "activated their lights and sirens" while pursuing a suspect who "dr[ove] over twenty-five miles over the speed limit."  (City Supp. at 8.)  Defendants are

---

[2] The Court similarly declines to consider the descriptions of Plaintiff's driving in Exhibit E of the Complaint.  *Staehr v. Hartford Fin. Servs. Grp., Inc.*, 547 F.3d 406, 425 (2d Cir. 2008) (courts may consider "*fact* that press coverage . . . contained certain information, without regard to the truth of their contents"(emphasis in original)).

22

correct that the pursuit at the center of *Scott v. Harris* featured "blue lights flashing and sirens blaring" and a suspect who "intentionally placed himself and the public in danger by unlawfully engaging in the reckless, high-speed flight," but such facts have not yet been established in the instant case.  550 U.S. 372, 384 (2007) (considering the issue of qualified immunity on summary judgment).  The allegations on the face of the Complaint are sufficient to state a claim for excessive force and dismissal prior to further factual discovery would be premature.  *See Shamir v. City of New York*, 804 F.3d 553, 556-57 (2d Cir. 2015) (arrestee adequately stated claim for use of excessive force where he alleged that officer "intentionally tightened [zip-tie handcuffs] excessively, causing injury to [arrestee's] lower arms"); *Ayers*, 2022 WL 4539580, at *4.  Accordingly, the Court denies the Levy Defendants' motion to dismiss the excessive force claim.

### 3. Counts Four, Five:  Fabrication of Evidence and Conspiracy to Fabricate Evidence

A plaintiff "may sue for denial of the right to a fair trial based on a police officer's fabrication of information . . . when the information fabricated is the officer's own account of his or her observations of alleged criminal activity, which he or she then conveys to a prosecutor." *Garnett v. Undercover Officer C0039*, 838 F.3d 265, 274 (2d Cir. 2016).  As is relevant here, a claim for fabrication of evidence with respect to one charge could be

23

sustained even if Plaintiff was "charged, detained, tried, and convicted for a separate offense." *Barnes v. City of New York*, 68 F.4th 123, 129-30 (2d Cir. 2023). When pleading a fabrication of evidence claim, "a plaintiff must establish that 'an (1) investigating official (2) fabricate[d] information (3) that is likely to influence a jury's verdict, (4) forward[ed] that information to prosecutors, and (5) the plaintiff suffer[ed] a deprivation of life, liberty, or property as a result.'" *Carruthers v. Colton*, 153 F.4th 169, 189 (2d Cir. 2025) (quoting *Garnett*, 838 F.3d at 279). "The fabrication element requires only that the defendant knowingly make a false statement or omission." *Id.* (quoting *Ashley v. City of N.Y.*, 992 F.3d 128, 143 (2d Cir. 2021)).

The Complaint falls short of the pleading requirements for fabrication of evidence. Fatally, the complaint does not allege that the Officer and Levy defendants fabricated evidence likely to influence a jury's verdict, or even that they manufactured the evidence at all. Instead, Plaintiff alleges only that Defendants failed to voucher the allegedly robbed cell phone, and that they tampered with or destroyed unspecified physical evidence concerning that phone. (*See e.g.*, Compl. at 5-8 (alleging Defendant Phelan conspired to "tamper[] with and destroy" evidence "concerning an [unvouchered] cell phone which had been described as being found in [vouchered] vehicle").) Accordingly,

24

Plaintiff's fabricated evidence claim is dismissed without prejudice. The conspiracy to fabricate evidence claim is likewise dismissed without prejudice for lack of a predicate constitutional violation. *Singer v. Fulton Cnty. Sheriff*, 63 F.3d 110, 119 (2d Cir. 1995).

### 4.    Count Six:  Deprivation of Medical Care

The Due Process Clause of the Fourteenth Amendment "require[s] the responsible government or governmental agency to provide medical care to persons . . . who have been injured while being apprehended by the police." *City of Revere v. Mass. Gen. Hosp.*, 463 U.S. 239, 244 (1983).[3] To state a claim for "deprivation of adequate medical care," Plaintiff must allege that the deprivation was "sufficiently serious" and that the defendant acted with a "sufficiently culpable state of mind." *Davis v. McCready*, 284 F. Supp. 3d. 108, 116 (S.D.N.Y. 2017).

Plaintiff alleges that he was "in and out of consciousness" at the time of his arrest and that, post-arrest, he was held "without medical treatment" for more than twenty-four hours. (Compl. at 3-4.) Although the allegations clearly show that the collision was catastrophic, Plaintiff fails to allege facts

---

[3] "A pretrial detainee's claim for deliberate indifference is evaluated under the Due Process Clause of the Fourteenth Amendment rather than the Eighth Amendment, as 'pretrial detainees have not been convicted of a crime and thus may not be punished in any manner—neither cruelly and unusually nor otherwise.'" *Davis v. McCready*, 283 F. Supp. 3d 108, 116 (S.D.N.Y. 2017) (citing *Darnell v. Pineiro*, 849 F.3d 17, 29 (2d Cir. 2017)).

showing that the deprivation of medical care was "sufficiently serious" and that he was inflicted by "a condition of urgency that may result in degeneration or extreme pain." *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998) (citation omitted) (describing standard for Eighth Amendment deprivation of medical care claim); *Caiozzo v. Koreman*, 581 F.3d 63, 69 (2d Cir. 2009) (claims for deprivation of medical care arising under Eighth and Fourteenth Amendments are evaluated using the same standard). Nor does Plaintiff allege that the Officer or Levy Defendants "recklessly failed to act with reasonable care . . . even though the defendant . . . knew, or should have known, that the condition posed an excessive risk to health or safety." *Maldonado v. Town of Greenburgh*, 460 F. Supp. 3d 382, 396 (S.D.N.Y. 2020) (citing *Darnell v. Pineiro*, 849 F.3d 17, 35 (2d Cir. 2017)). Plaintiff's deprivation of medical care claim is dismissed without prejudice.

## III. Plaintiff's State Law Claim Against Officer and Levy Defendants

The Court next turns to Plaintiff's intentional infliction of emotional distress claim. "Where state law claims are joined with another claim over which federal courts have subject matter jurisdiction and the state law claims arise out of a common nucleus of operative fact, the district court has jurisdiction to hear the state law claims." *Khan v. Costco Wholesale, Inc.*, 2001 WL 1602168, at *9 (E.D.N.Y. Dec. 13, 2001) (citing *Robison v. Via*,

821 F.2d 913, 925 (2d Cir. 1987)). Notably, the Court's ability to exercise its supplemental jurisdiction over all defendants remains even though only the excessive force claim against the Levy Defendants survives. *Ciambriello v. Cnty. of Nassau*, 292 F.3d 307, 325 (2d Cir. 2002); *Briarpatch Ltd., L.P. v. Phoenix Pictures, Inc.*, 373 F.3d 296, 308 (2d Cir. 2004). In the instant case, the facts underlying both Plaintiff's federal claims and intentional infliction of emotional distress claim are one and the same. As such, the Court will exercise its supplemental jurisdiction to consider Plaintiff's state law claim. *See Stapon v. Riverhead Cent. Sch. Dist.*, 2021 WL 12319295, at *8 (E.D.N.Y. Apr. 5, 2021).

### 1.    Failure to File a Notice of Claim

As an initial matter, the Court notes that Plaintiff has failed to plead that he served a timely Notice of Claim, which is generally required when asserting claims against a municipal entity or its employees. N.Y. Gen. Mun. Law § 50-e, 50-I; *King v. City of New York*, 2019 WL 5653856, at *4-5 (E.D.N.Y. Mar. 28, 2019); *see Hardy v. NYC Health & Hosp. Corp.*, 164 F.3d 789, 793 (2d Cir. 1999) ("[I]n a federal court, state notice-of-claim statutes apply to state-law claims." (emphasis omitted)). Plaintiff's failure to plead his adherence with § 50-e and 50-i bars claims against the Defendants in their official capacities outright, as well as in their individual capacities *if* the City is

required to indemnify them for their losses. *Johnson v. Cnty. of Nassau*, 2014 WL 4700025, at *24 (E.D.N.Y. Sept. 22, 2014) (requirements of § 50-e and 50-I are "not conditions precedent to the commencement of an action against a [city employee] unless the [city] is required to indemnify such person" (citations omitted)). General Municipal Law § 50-k(3) mandates the City's indemnification when its employee's liability (1) "arose from conduct within the scope of his employment and in the discharge of his duties," as long as (2) "the employee was not in violation of any rule or regulation of his agency" and (3) "the injury did not result from intentional wrongdoing or recklessness on the part of the employee." *Kavazanjian v. Rice*, 2008 WL 5340988, at *6 (E.D.N.Y. Dec. 22, 2008) (citation omitted).

As to the first requirement, the Court finds that the Officer and Levy Defendants were plainly acting within the scope of their employment. In considering this question, the Court weighs factors including "whether the act is one commonly done by such an employee; the extent of departure from normal methods of performance; and whether the specific act was one that the employer could reasonably have anticipated." *Pizzuto v. City of Nassau*, 239 F. Supp. 2d 301, 313 (E.D.N.Y. 2003) (internal quotations omitted). Plaintiff alleges that Defendants' misconduct arose from their performance of official duties, including making arrests and gathering evidence. *See Dorsey v. City of Albany*

28

*Police Dep't*, 2016 WL 11605138, at *2-3 (N.D.N.Y. Apr. 13, 2016) (defendant would be indemnified for conduct alleged to have constituted excessive force because he was "on duty, making an arrest with other police officers, and driving a police vehicle").

However, the Court finds it premature to decide at this stage whether the Defendants "w[ere] not in violation of any rule or regulation of [their] agency" or that "the injury or damage" did not result "from intentional wrongdoing or recklessness." Gen. Municipal Law § 50-k(3); *Kavazanjian* , 2008 WL 5340988, at *6. Indeed, Plaintiff has alleged that a supervising officer at the NYPD was in the process of calling off the pursuit and that the ramming of his vehicle may have violated internal NYPD guidelines. (Compl. at 5-6; *see also* Pl.'s Opp.). Furthermore, the tort, if proven, "would, by definition," reflect conduct "constitut[ing] intentional wrongdoing." *Kavazanjian*, 2008 WL 5340988, at *6 (citation omitted) (declining to dismiss intentional tort claims, including intentional infliction of emotional distress, as procedurally barred by plaintiff's failure to file a Notice of Claim); *Jean-Laurent v. Hennessy*, 2008 WL 3049875, at *19 (E.D.N.Y. Aug. 1, 2008) (collecting cases). *But see Perez v. Cnty of Nassau*, 294 F. Supp. 2d 386, 391 (E.D.N.Y. 2003) (dismissing state law claims for false arrest, malicious prosecution, assault, and battery for failure to plead the filing of the notice of claim). Accordingly, the Court finds that Plaintiff's failure to file a

notice of claim does not procedurally bar his intentional infliction of emotional distress claim.

### 2.  Intentional Infliction of Emotional Distress

Defendants incorrectly argue that Plaintiff's claim for intentional infliction of emotional distress is duplicative of other causes of action in his complaint and should be dismissed. (City Mem. at 19.)  Plaintiff brings no other state law tort claims, so his claim cannot be duplicative of them.  *Moore v. City of New York*, 219 F. Supp. 2d 335, 339 (E.D.N.Y. 2002) ("The New York Court of Appeals has strongly cautioned against allowing emotional distress claims to be brought where other *tort remedies* are available." (emphasis added) (citing *Fischer v. Maloney*, 373 N.E.2d 1215 (1978))).

"Under New York law, a claim for intentional infliction of emotional distress requires a showing of (1) extreme and outrageous conduct; (2) intent to cause, or reckless disregard of a substantial probability of causing, severe emotional distress, (3) a causal connection between the conduct and the injury; and (4) severe emotional distress."  *Stuto v. Fleishman*, 164 F.3d 820, 827 (2d Cir. 1999).  Plaintiff has failed to allege sufficient facts regarding each of these elements, including that the misconduct was "so outrageous . . . as to go beyond all possible bounds of decency . . . and utterly intolerable in a civilized society" or that Defendants intended to cause him severe emotional distress.

30

*Id.* Accordingly, Plaintiff's intentional infliction of emotional distress claim is dismissed without prejudice.

## CONCLUSION

For the foregoing reasons, Defendants' motions to dismiss are GRANTED IN PART and DENIED IN PART as follows.

(1)  Counts One through Seven are DISMISSED WITH PREJUDICE as to Defendants Michelle Kaszuba, Crystal Igneri, Denise Tirino;

(2)  Count One (False Arrest) is DISMISSED WITH PREJUDICE as to Defendants Joseph Solomon, Emanuel Vizzotti, Salvatore Taorimina, Charles Lovett, Kevin Phelan, Joseph Manzella, Kevin Hammerschlog, Matthew Levy, and Paul Kearon;

(3)  Counts Two (Malicious Prosecution), Four (Fabrication of Evidence), Five (Conspiracy to Fabricate Evidence), Six (Deprivation of Medical Care), and Seven (Intentional Infliction of Emotional Distress) are DISMISSED WITHOUT PREJUDICE as to Defendants Joseph Solomon, Emanuel Vizzotti, Salvatore Taorimina, Charles Lovett, Kevin Phelan, Joseph Manzella, Kevin Hammerschlog, Matthew Levy, and Paul Kearon;

(4) Count Three (Excessive Force) is DISMISSED WITHOUT PREJUDICE as to Defendants Joseph Solomon, Emanuel Vizzotti, Salvatore Taorimina, Charles Lovett, Kevin Phelan, Joseph Manzella, Kevin Hammerschlog;

(5)  Count Three (Excessive Force) proceeds as to Defendants

31

Matthew Levy and Paul Kearon.

Defendants are ordered to serve Plaintiff and note service on the docket by close of business on February 26, 2026.  On or before March 27, 2026, Plaintiff may file an amended complaint addressing the deficiencies identified herein with respect to any claims dismissed without prejudice, consistent with this Opinion. Failure to file an amended complaint by that date will result in dismissal of those claims with prejudice and without further leave to amend.

**So ordered.**

Dated:     February 25, 2026
           Brooklyn, New York

_____
**Kiyo A. Matsumoto**
United States District Judge
Eastern District of New York